UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.  15-CV-23075-MOORE/MCALILEY

BIOHEALTH MEDICAL LABORATORY,
INC., a corporation organized under the
laws of the State of Florida,
PB LABORATORIES, LLC, a limited
liability company organized under the laws
of the State of Florida,

        Plaintiffs,

v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, a company
organized under the laws of the State of
Connecticut, CIGNA HEALTH AND LIFE
INSURANCE COMPANY, a company
organized under the laws of the State of
Connecticut,

        Defendants.
_____/

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, Biohealth Medical Laboratory, Inc. and PB Laboratories, LLC ("Plaintiffs"),

hereby file this Memorandum of Law in opposition to the motion to dismiss (the "Motion") filed

by Defendants Connecticut General Life Insurance Company and Cigna Health and Life

Insurance Company ("Defendants") and in support state as follows.

**INTRODUCTION**

This action arises out of Defendants' failure to pay for toxicology testing services

provided by Plaintiffs to their insureds.  To give Defendants fair notice of the claims at issue,

Plaintiffs attached to the Complaint two spreadsheets (one for each Plaintiff) identifying: (i) the

claim numbers that **Defendants themselves assigned** to each claim submitted by Plaintiffs, (ii) the patient numbers assigned to each insured, and (iii) the date the services were rendered. *See* Exhibits B and C to Complaint.  Plaintiffs further state the services at issue were toxicology laboratory testing services (*see* Compl. at 1, ¶¶ 15, 34); that Defendants confirmed that the subject services were covered benefits under the applicable policies (*id.* at ¶¶ 15-17); and that Defendants have failed to produce the insurance plan or any other document supporting their wrongful denial to pay Plaintiffs' claims despite Plaintiffs' multiple requests. *Id.* at ¶¶ 22-24, 27.

These allegations are more than sufficient to state a claim for the payment of benefits under ERISA and comply with the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Notwithstanding, Defendants move to dismiss the Complaint asserting a number of arguments that are improper at this procedural juncture.

First, Defendants seek to limit the scope of the assignment the insureds gave to Plaintiffs to sue for the insurance benefits at issue.  This argument is belied by the express language of the assignments. *Id.* at ¶ 13, Ex. A.  Defendants' distorted and convenient interpretation of these assignments simply has no place on a motion to dismiss.

Second, Defendants claim that Plaintiffs failed to reference the specific clause of the insurance plan that was breached.  The bad faith nature of this argument cannot be overstated. Defendants confirmed the subject benefits are covered benefits under the applicable plan; then Defendants refused to provide the insurance plans to Plaintiffs; and now they seek to deny Plaintiffs their day in court by contending that Rule 8(a) somehow requires the actual section of the plan that was breached.  There is no such requirement.  It is not surprising that the only authority that Defendants cite for this proposition is a case with more than 15 defendants, several unrelated insurance policies, and several unrelated claims for benefits.  That is obviously not the

case here, where all of the claims arise out of Defendants' failure to pay for services they admitted were covered and their scheme to deny any relief to Plaintiffs.

Third, Defendants argue that Plaintiffs have failed to exhaust the available administrative remedies, without identifying which administrative remedies are available to Plaintiffs. This omission is not accidental. Plaintiffs make clear that Defendants have denied the claims not because of any decision pertaining to the claims, but under the pretense that Plaintiffs have engaged in a policy of waiving co-payments. [Compl. at ¶¶ 20, 26]. What administrative remedy is available for such accusation? Plaintiffs asked Defendants this question prior to filing this action, but Defendants ignored these requests. *Id.* at ¶¶ 23, 27. Plaintiffs produced numerous documents showing that they have a policy in place to charge co-payments and asked for an opportunity to debate and refute the Defendants' unfounded conclusions, but these requests were ignored. *Id.* at ¶¶ 17-24. These allegations, which must be assumed as true for purposes of this Motion, more than establish that Defendants made no adequate administrative remedies available to Plaintiffs.

Defendants' argument that Plaintiffs' claims are duplicative fares no better, as Plaintiffs are allowed to plead alternative ERISA claims. The same is true of the attacks on Plaintiffs' state law claims, which are properly pled and cannot be dismissed.

Therefore, the Motion has no legal or factual support and should be denied.

## MEMORANDUM OF LAW

### A.   Plaintiffs Have Standing to Sue for Breach of Fiduciary Duty and Breach of Self-funded Plans

Defendants claim that their insureds' assignments to Plaintiffs do not encompass (1) claims for breach of fiduciary duty and (2) claims arising out of self-funded plans. Both of these arguments are belied by the express language of the assignments.

It is undisputed that a company that provides medical services to the beneficiary of an insurance policy may obtain derivative standing to sue the insurer by securing an assignment of rights from the insured. *See e.g., Cagle v. Bruner*, 112 F.3d 1510, 1514-15 (11th Cir. 1997).  The scope of the assignment is governed by the terms and language of the assignment.

The assignments at issue in this case expressly provide, in pertinent part:

> I hereby irrevocably assign to [Plaintiffs] … all benefits under any policy of insurance, indemnity agreement, or any collateral source as defined by statute for services provided.  This assignment includes all rights to collect benefits directly from my insurance company any ***all rights*** to proceed against my insurance company in ***any action***, including legal suit, if for any reason my insurance company fails to make payment of benefits due.  This assignment also includes all rights to recover attorney's fees and costs for such action brought by the provider as my assignee.

[Compl. at 5 (emphasis added)].

As such, this is not only an assignment of benefits, but more importantly, an assignment of the right to bring "any action" for those benefits.  Defendants' attempt to carve out claims for fiduciary duty and for self-funded plans from the term "any action" has no legal or factual support.

## 1.   *The Assignments apply to claims for breach of fiduciary duty*

There is no legal basis to carve breach of fiduciary duty claims out of the assignments given to Plaintiffs.  Indeed, Defendants raised and lost this argument in *North Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 782 F. Supp. 2d 294 (S.D. Tex. 2011), a case that involved an assignment as broad as the one at issue in this action.  In *North Cypress*, the court concluded that plaintiffs had obtained an express assignment to pursue a legal action, not just an assignment of benefits. *Id.* at 302-03.  The same reasoning applies here.  Plaintiffs are not relying on implicit assignments or operation of law.  The express language of the assignments demonstrate that the

insureds assigned to Plaintiffs both their benefits and rights to pursue any legal action under the plans.

Evidently recognizing the infirmities in their arguments, Defendants rely on two cases that involved limited assignments, which cannot be compared in good faith to the assignments at issue in this case.  In *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc*, 546 F. App'x 846 (11th Cir. 2013), the operative language in the assignment was "I authorize insurance benefits to be paid directly to the provider." *Id.* at 852.  The assignment did not include any reference to the right to bring a legal action.  Indeed, the Eleventh Circuit noted that "the plaintiffs' contention stretches beyond its breaking point the plain meaning of the agreement, which assigns only the right to receive benefits and not the right to assert claims for breach of fiduciary duty or civil penalties." *Id.* at 852.  That is obviously not the case here.

Similarly, in *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc*, No. 14-81271-CV, 2015 WL 2198470 (S.D. Fla. May 11, 2015), which actually dealt with a durable power of attorney, not an assignment of benefits *per se*, the district court concluded the laboratories lacked standing because the relevant document assigned the benefits to another party, not the laboratories, and even then it only assigned to the other party the right to *receive benefits*.  *Id.* at 3.  *Peacock*, relying on *Sanctuary Surgical*, discussed the effect of an assignment that merely "authorizes a provider to receive benefits" and that, with such language, it only assigns "the right to receive benefits and not the right to assert claims for breach of fiduciary duty or civil penalties under ERISA." *Id.* (citing *Sanctuary Surgical*, 546 F. App'x 846) (internal quotations omitted). Again, that is not the case here.

The assignments obtained by Plaintiffs here clearly indicate more than the mere ability to receive benefits.  Plaintiffs may seek to enforce "all rights to collect benefits directly from my insurance company ***and all rights*** to proceed against [the insured's] insurance company in any

action." [Compl. at 5 (emphasis added)].  The assignments further extend to "all rights to recover attorneys' fees and costs for such action brought by the provider as [the insured's] assignee."*Id.* In other words, the insureds assigned to Plaintiffs both the ability to receive benefits and all rights under the insureds' plan, which would include § 1109 fiduciary duty claims. *See also id.* at ¶ 47 ("As assignees of the beneficiaries of the Cigna Plans, the Laboratories are entitled to recover benefits due to the beneficiaries *and enforce the rights of the beneficiaries under the terms of the Cigna Plans*.") (emphasis added).

Therefore, Plaintiffs have standing to assert the fiduciary duty claims in Counts II and V.

2.    *The Assignments apply to claims arising out of self-funded plans*

Similarly, Defendants' effort to carve out actions arising out of self-funded plans is not supported by the express terms of the assignments.

The express language of the assignments include not only insurance, but also "all benefits under any … indemnity agreement, or *any collateral source* as defined by statute for services provided." *Id.* at 5 (emphasis added).  Self-funded plans are collateral sources of insurance under Florida law.  Indeed, Fla. Stat. § 768.76(2)(a)(3) explicitly includes within the definition of collateral source, "any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the costs of hospital, medical, dental or other health care services."

Given the utter lack of factual and legal support for their argument in this Circuit, Defendants rely on an unpublished summary judgment order from a district court in South Carolina, *Med. Univ. Hosp. Auth./Med. Ctr. Of the Med. Univ. of S. Carolina v. Oceana Resorts, LLC*, No. 2:11-CV-1522, 2012 WL 683938 (D.S.C. Mar. 2, 2012), which held that an assignment limited to "any insurance policy" could not include self-funded plans.  Putting aside the fact *Oceana Resorts* is not binding on this Court, that case is distinguishable because the

relevant assignment was limited to insurance policies alone, and provided specific examples – all of which excluded self-funded benefit plans. *Id.* The broad assignments in this case extend to insurance provided by collateral sources, which include self-funded plans.

Next, Defendants contend that the Complaint is deficient for failing to plead "whether any disputed member claims are made under self-funded Cigna Plans." [Motion at 5]. This argument should be rejected. The Complaint identifies each claim by using the Cigna claim number. [Compl. at Ex. B-C]. Therefore, this is not a case where the complaint leaves Defendants without the ability to ascertain under which plan Plaintiffs are suing. Quite the contrary, the explicit identification of the claim numbers assigned *by Defendants* notifies them of the plans at issue, without disclosing any confidential information about the patients, which is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*, and the regulations promulgated pursuant thereto.

Defendants' reliance on *Response Oncology, Inc. v. MetraHealth Ins. Co*, 978 F. Supp. 1052 (S.D. Fla. 1997) is misplaced. *Response Oncology* dealt with claims against more than 15 unrelated defendants, including several insurance companies or administrators of insurance plans, "seeking damages for treatments provided to patients with different diagnoses, during different time periods, at different locations, and in a wide range of amounts." 978 F. Supp. at 1055. In particular, *Response Oncology* found the plaintiff's allegations were insufficient because they did not include sufficient details concerning the basis and nature of the claims, including "the plan administrator or fiduciary of the plan" and "the basis for liability of the defendant sued pursuant to ERISA." *Id.* at 1065.

These concerns do not exist here. Plaintiffs' claims are limited to toxicology tests for a finite period (February 2013 to the present), and the specific plans and insureds are identified by their individual plan or identification numbers and service dates in Exhibits B and C. That

information is more than sufficient to put Defendants on notice of Plaintiffs' claims and presents a plausible basis to support the claims. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Plaintiffs have met this standard and thus the Motion should be denied.

### B. <u>Plaintiffs Sufficiently Plead a Claim for Benefits Under ERISA</u>

Defendants claim that Count I should be dismissed for lack of specificity.  They do not (and cannot) deny that Plaintiffs have identified the claim number assigned by them to each claim at issue. [Compl. at Ex. B and C].  They also do not (and cannot) deny that Plaintiffs have identified the type of service provided to each of the insureds.  After all, Plaintiffs are providers of toxicology testing services. *Id.* at 1, ¶¶ 15, 34.  Nor do they deny that Plaintiffs have provided the date on which each insured received the services at issue and the claim number of Plaintiffs (with the corresponding information included in the claim request). *Id.* at Ex. B and C.  More importantly, they have not (and cannot) deny that before providing the subject services Plaintiffs contacted Defendants and confirmed that the services were covered under the applicable plans. *Id.* at ¶¶ 15-17.  Given these factual details in the Complaint and the HIPAA regulations which prevent Plaintiffs from disclosing the actual information of the insureds, it is improper for Defendants to seek dismissal for lack of specificity.

Defendants claim that Plaintiffs fail to allege the specific provision of the insurance plan that Defendants breached.  This argument is borderline frivolous and in bad faith, as Defendants continue to fail and refuse to honor Plaintiffs' requests for the plan documents and other documents supporting the denial of the claims (*id.* at ¶¶ 22-24, 27), and the Complaint repeatedly pleads that Defendants failed to comply with their obligation to reimburse Plaintiffs for services they confirmed were covered. *Id.* at ¶¶ 15-17.  Construing the allegations in the Complaint in the light most favorable to the Plaintiffs, it strains credibility for Defendants to now claim they have

no idea as to the specific plan under which they confirmed coverage. *See Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005) (in considering a motion to dismiss, the court is to construe the complaint "in the light most favorable to the plaintiff and accept […] as true all facts which the plaintiff alleges."); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Rule 8(a) of the Federal Rules of Civil Procedure requires no more than what Plaintiffs have pled and does not support the specificity requirement that Defendants advocate in their Motion.  As the Court made clear in *United Surgical Assistants, LLC v. Aetna Life Ins. Co*, No. 8:14-cv-211-T-30MAP, 2014 WL 5420801, at *3 (M.D. Fla. Oct. 22, 2014), an ERISA plaintiff satisfies the requirements of Rule 8(a) by providing "information identifying the patient, procedure performed, date of the procedure, and transaction amount to allow [the insurer] to identify" the plans at issue.  The Complaint attaches a spreadsheet that identifies the claim number assigned to each claim by Defendants.  These claim numbers give Defendants notice of the name of the insured and the amount of the services claim.  In addition, the spreadsheet includes the date each service was provided and Plaintiffs' patient numbers. [Compl. at Ex. B and C].  As for the procedure, they are all identical insofar as Plaintiffs' services are limited to performing toxicology services, specifically blood and urine testing to monitor compliance and adherence to certain prescribed drug regimens and any other applicable rehabilitation guidelines or regulations. *Id.* at 1-2, ¶¶ 8, 34.  These factual allegations are sufficient to state a claim.

Defendants rely on *Sanctuary Surgical Centre, Inc. v. UnitedHealth Grp., Inc*, No. 10-81589, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013), which is distinguishable because the central issue was the question of medical necessity and the insurer's denial of claims on that basis *Id.* at 6-7.  Here, there is no question regarding medical necessity.  Quite the contrary, Defendants confirmed that the services were covered by the subject plans. [Compl. at ¶¶ 15-16, 75].

This case focuses on Defendants' adoption of a company-wide policy to willfully refuse to pay benefits to out-of-network laboratories, like Plaintiffs, and for failing to consistently and in good faith apply the plans' terms in accordance with ERISA's mandates. *Id.* at 1-2.  Simply put, since early 2013, Defendants have used dilatory tactics to avoid processing, reviewing and making eligibility determinations for the claims in accordance with 29 U.S.C. § 1132(e) (ERISA) and Florida state law. *Id.* at ¶¶ 17-24, 25-29.  Defendants have denied these claims based on unfounded and unsupported allegations that Plaintiffs either waived insureds' co-payment obligations or engaged in a policy of fee forgiveness. *Id.* at ¶¶ 20, 26.  However, Defendants have failed to provide the subject plans or any supporting information related to the basis for the denial of the claims, failed to provide required documentation and disclosures, and applied an arbitrary and capricious methodology in the interpretation and implementation of the plan terms. *Id.* at ¶¶ 17-24, 25-29.

ERISA plans are governed by statute, which are incorporated as part of the relevant plans.  In violating these statutes, Defendants have breached their contracts with the insureds. For example, pursuant to 29 C.F.R. § 2560.501-1(g), Defendants have a duty to provide written notification for the denial of a claim including (a) the reason or reasons for the denial, (b) a reference to the specific plan provisions on which the denial is based, (c) a description of any additional material necessary to perfect the claim, and (d) a description of the plans review procedures.  Defendants have failed to comply with this regulation. [Compl. at ¶ 22]. Consequently, Plaintiffs have not received this critical information from Defendants, and it would be unjust to allow Defendants to violate the statute by not providing the required plan information and profit by securing a dismissal by virtue of Plaintiffs' lack of access to the plans. *See also* 29 C.F.R § 2560.503-1(h)(2)(iii) (providing that (2) … "the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a "full and fair

review" of a claim and adverse benefit determination unless the claims procedures … (iii) [p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.).

The Complaint and spreadsheet sufficiently plead a claim for ERISA benefits. Therefore, the Motion to dismiss Count I must be denied.

## C.     <u>Plaintiffs Properly Assert an ERISA Claim for Breach of Fiduciary Duty</u>

Defendants contend that Plaintiffs' claims for breach of fiduciary duty under ERISA must be dismissed as duplicative. In essence, Defendants argue that this claim fails to add anything beyond the relief available through Plaintiffs' Section 502(a)(1)(B) claim and thus must be dismissed. Tellingly, all of the authorities cited by Defendants are summary judgment or trial orders. *See Varity Corp. v. Howe*, 516 U.S. 489 (1996) (preliminary injunction order; conclusions of law after jury trial); *Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084 (11th Cir. 1999) (summary judgment order); *Ogden v. Blue Bell Creameries USA, Inc.*, 348 F.3d 1284 (11th Cir. 2003) (conclusions of law after bench trial). The reason is self-evident. A party has a right to plead claims in the alternative, even if such claims appear to be duplicative. *See* Fed. R. Civ. P. 8(a)(3). This principle warrants the denial of Defendants' Motion.

The denial of the Motion is particularly appropriate here, as the fiduciary duty claim is not merely seeking to recover benefits due. Rather, as 28 U.S.C. § 1132(a)(3) states, Plaintiffs seek "to obtain other appropriate equitable relief." In particular, as alleged, Plaintiffs seek an accounting of Defendants' records regarding Defendants' conduct in evaluating and administering the relevant claims, in addition to further equitable relief. These remedies and relief are in addition to payment of benefits and thus do not "collapse" into Plaintiffs' Section 502(a)(1)(B) claim.

Further, dismissal is inappropriate and premature here where Defendants have not produced the subject plans and have failed to admit the viability of Plaintiffs' claims for payments.  Under this scenario, Plaintiffs are entitled to plead an alternative claim under Section 502(a)(1)(B). Indeed, as explained in *Hudgens v. Chrysler Grp., LLC*:

> the Eleventh Circuit has held that a breach of fiduciary claim [cannot] constitute appropriate equitable relief within the meaning of [§ 1132(a)(3)] for an injury that could be adequately remedied by a cause of action under [§ 1132(a)(1)(B)].  However, it appears, based on the pleadings, that it is possible for plaintiff to make out a cause of action for which there is no remedy under § 1132(a)(1)(B), thus possibly providing him with a cause of action under § (a)(3), similar to the situation in *Jones*. Therefore, **dismissal at this stage of the proceedings is premature.  It may, nonetheless, be appropriate for reconsideration at the summary judgment stage of the proceedings**.

No. 2:12-CV-00993-HGD, 2013 WL 4851680, at *8 (N.D. Ala. Sept. 10, 2013) (quoting and citing *Jones v. Am. Gen. Life & Accid. Ins. Co.*, 370 F.3d 1065, 1073 (11th Cir. 2004) (internal quotations omitted)) (emphasis added).

Furthermore, Plaintiffs' claim for breach of fiduciary duty is not solely based upon the mere failure to pay, but on a claim that Defendants have engaged in a systematic pattern of misrepresentation and baseless accusations to deny the claims for services rendered to their insureds, *after* Defendants confirmed the availability of coverage. [Compl. at ¶ 29].  In *Jones*, the Eleventh Circuit acknowledged that dismissal of the § 502(a)(3) claim is only proper where it is clear that a basis for a claim under an alternate section of the statute exists. 370 F.3d at 1072-73. Here, it is far from clear at this juncture that Section 502(a)(1)(B) provides a full and adequate remedy for Plaintiffs' claims.  Given these allegations, Defendants' Motion to dismiss the breach of fiduciary duty claim (Count II) as duplicative should be denied.[1/]

---

[1/]     In a passing footnote, Defendants also assert the fiduciary duty claim should be dismissed for failing to comply with Rule 8, Fed. R. Civ. P. [Motion at 8 n. 1].  The argument fails.  Here, Plaintiffs allege Defendants act as a fiduciary under ERISA because they exercise "discretionary authority or discretionary control respecting the management of an employment

### D.      Plaintiffs Sufficiently Plead the Unavailability of Administrative Remedies

Defendants contend that Counts I and II must be dismissed because Plaintiffs failed to exhaust administrative remedies before filing this lawsuit. [Motion at 9-11].  This argument fails because the Complaint establishes that no available administrative remedies exist and/or that the exhaustion of administrative remedies would be otherwise futile.

First, as a preliminary matter, "[f]ailure to exhaust administrative remedies is ordinarily an affirmative defense.  Plaintiffs are not required to negate an affirmative defense in their complaint." *In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  "Instead, the law in this Circuit only mandates the plaintiff to pled exhaustion beyond a mere 'all conditions precedent were satisfied' statement."*Id.* (quoting *Variety Children's Hosp. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 n. 2 (11th Cir. 1995)).

Second, the Complaint makes clear that Defendants have failed to identify what administrative remedies are available in this case.  Plaintiffs' claims were not denied because of any coverage issue or any reason pertaining to the actual claims.  Instead, Defendants have summarily advised Plaintiffs that they concluded Plaintiffs had an illegal policy of waiving co-payments. [Compl. at ¶¶ 20, 26].  Plaintiffs produced documentation to Defendants and asked for an opportunity "to address" Defendants' concerns, but Defendants flat out ignored these requests. *Id.* at ¶¶ 19-28.   Plaintiffs are unaware, and Defendants have refused to advised Plaintiffs, of any administrative remedy available to revoke the accusation that Plaintiffs are engaged in a policy of waiving co-payments or which administrative department has the authority to reverse this finding.  The lack of any such remedy requires the denial of Defendants' Motion.  *See Bacon v. Stiefel Labs., Inc.*, 677 F. Supp. 2d 1331, 1340 (S.D. Fla. 2010)

---

benefit plan and the disposition of its assets" and "discretionary authority in the administration of the plan." [Compl. 1 at ¶ 44].

("Therefore, a resort to the administrative appeals process would be futile because the Committee does not have the power to remedy Plaintiffs' perceived harm.  As such, the Court will exercise its discretion and excuse Plaintiffs' failure to exhaust their administrative remedies, and therefore the ERISA counts should not be dismissed on this basis.").

Plaintiffs have produced every document requested by Defendants and have asked Defendants whether there is any other way to seek redress.  Defendants have not provided Plaintiffs with any administrative remedy. [Compl. at ¶¶ 19-28].  This case is similar to *In re Managed Care Litig.*, where the court denied a motion to dismiss for failure to exhaust administrative remedies because plaintiffs alleged that defendants had not instructed plaintiffs as to what additional relief they had to pursue. 595 F. Supp. 2d at 1353-54.  As that court reasoned:

> At this stage of the proceedings these allegations are sufficient. It is simply too early to determine whether the allegations raised in the Complaint, if true, are sufficient to satisfy the exhaustion of administrative remedies under ERISA. It may well be that the steps taken by [Plaintiffs], as alleged in the Complaint, were all that was required under the controlling subscribers (sic) agreement. Alternatively, if further discovery reveals that the terms of the plan mandated additional administrative steps, Defendants may raise this issue again as an affirmative defense on a motion for summary judgment.

*Id.* at 1354; *see also Fla. Health Sci. Ctr. Inc. v. Humana Med. Plan., Inc*, 190 F. Supp. 2d 1297 (M.D. Fla. 2001) (holding that compliance with all the requests received from defendants satisfied exhaustion of remedy requirement).  The same reasoning applies here, particularly as Defendants have failed to identify any administrative procedure to appeal or seek review of an accusation that a service provider has a policy of waiving co-payments or any administrative body that had the authority to reverse this finding.

Defendants' reliance on cases discussing conclusory, bare allegations of futility have no application to this case.  Plaintiffs have sufficiently pled facts, beyond bald or conclusory

statements, to support the absence or futility of administrative remedies.  Thus, the argument that Plaintiffs have failed to exhaust administrative remedies must fail.

     **E.**     <u>**ERISA Does Not Preempt Plaintiffs' State Law Claims**</u>

     Defendants move to dismiss the state law claims arguing they are preempted by ERISA insofar as the Complaint fails to sufficiently allege the particulars of the non-ERISA plans.  This argument ignores that Plaintiffs have explicitly limited their state law claims to non-ERISA plans and are pled in the alternative "to the extent that the Cigna Plans are not issued pursuant to an employee benefit plan." [Compl. at ¶¶ 61, 69].  Defendants, having already assigned claim numbers to each claim based on their knowledge of their subject ERISA and non-ERISA plans, exclusively possess (and have refused to provide to Plaintiffs) the very information that they now claim is missing.  Defendants should not now benefit from their tactic of "hiding the ball."

     Where, as here, there are non-ERISA plans, courts acknowledge that the state law claims are not preempted. *See e.g., Kemp v. Int'l Bus. Machs. Corp*, 109 F.3d 708, 714 (11th Cir. 1997) (finding no complete preemption where plaintiffs sough benefits from a non-ERISA plan); *United Surgical Assistants, LLC,* 2014 WL 5420801, at *5 ("As previously stated, some of USA's claims involve non-ERISA plans and are therefore not preempted);*Lott v. Metro. Life Ins. Co.*, 849 F. Supp. 1451, 1455 (M.D. Ala. 1993) (concluding that where "the inducement was with regard to a non-ERISA plan, … plaintiffs' fraud in the inducement claims are not preempted.").

     Defendants contend that Plaintiffs speculate that some of the insurance plans are not covered by ERISA.  But, pleading in the alternative is permissible under Fed. R. Civ. P. 8(a)(3), (d).  Because Plaintiffs allege that some of the subject plans are not employment benefit plans, Plaintiffs are allowed to proceed with their state law claims.  Defendants' Motion to dismiss Counts II, IV, V and VI on this basis must be denied.

**F.**       **Plaintiffs Sufficiently Plead Breach of Contract Claims (Counts III and IV)**

Defendants seek dismissal of Plaintiffs' contract claims for failing to "identify a single contract or contract provision that was allegedly breached." [Motion at 13]. The Complaint's allegations belie Defendants' assertion. Indeed, it is incredible for Defendants to claim complete ignorance as to the contract provisions that they breached, because, as Plaintiffs allege (which at this stage must be accepted as true), Defendants confirmed coverage and promised to pay the uniform per test amount. They could only have done so in accordance with specific provisions of the Cigna Plan.

Nonetheless, to survive dismissal, Plaintiffs' need only allege "(1) a valid contract, (2) a material breach of the contract, and (3) damages resulting from the breach." *NPA Assoc., LLC v. Lakeside Portfolio Mgmt., LLC*, No. 12-23930-CIV, 2014 WL 714812, at *4-5 (S.D. Fla. Feb. 22, 2014). Plaintiffs satisfy each of these elements. Plaintiffs allege that a valid contract, the Cigna Plans, exists (*see* Compl. at ¶¶ 9, 51-52), pursuant to which Defendants are obligated to pay for the toxicology tests identified in the Complaint. *Id.* at ¶¶ 16, 17, 18-25, 30, 51-52, 59, 60 and Ex. B and C. Plaintiffs further allege that Defendants materially breached the contract by refusing and failing to pay for the toxicology tests. *Id.* at ¶¶ 17, 18, 53, 61. And, Plaintiffs allege that they, as assignees of Defendants' insureds (*id.* at ¶¶ 13, 54-55) and third-party beneficiaries (*id.* at ¶¶ 62-63), have suffered damages as a result of Defendants' breach. *Id.* at ¶¶ 29, 53 and 61. Plaintiffs are required to do nothing more.

Defendants' contention that Plaintiffs need to paraphrase the specific portion of the insurance plans – which Defendants have refused to provide despite multiple requests therefor – has no legal support. Indeed, this argument was explicitly rejected in *NPA Assoc., LLC*, where the court held that all that is required is the plaintiff "identify a valid contract 'with a degree of specificity.'" 2014 WL 714812, at *4 (quoting *Formula LLC v. RSUI Indem. Co*, No. 09-60592-

CIV, 2009 WL 2342455, at *3 (S.D. Fla. July 28, 2009)). *See also Peacock Med. Lab, LLC*, 2015 WL 2198470, at *4 (S.D. Fla. May 11, 2015) (recognizing that a breach of contract claim is sufficient without reference to the contract or its language because contracts for insurance are governed by Florida statutory law, which requires benefits to be paid, and that "where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract."). Plaintiffs have met their pleading obligation. Therefore, dismissal of Counts III and IV is unwarranted.

### G.      Florida Law Recognizes a Fiduciary Duty in This Context

Defendants contend that Plaintiffs' state law claim for breach of fiduciary duty must be dismissed because insurance carriers do not owe any fiduciary duty to their insureds under Florida law. This argument is based on a distortion of Florida law.

However, as the allegations of the Complaint make clear, the issue presented is not one regarding the fiduciary duty an insurance carrier owes its insured. [Compl. at ¶¶ 13-14, 66-71]. Rather, this claim is specifically narrowed to self-funded health benefit plans, which, in their argument regarding assignments, Defendants contend are not policies of "insurance." [Motion at 5]. In addition, in this context, Defendants are not insurance carriers *per se*, but act as third-party administrators handling the administration of the insureds' self-funded plans, which creates a fiduciary duty to the insureds-assignors. Consequently, each case Defendants cite is inapposite.

In *Hepp v. Paul Revere Life Ins. Co.*, No. 8:13-cv-02836-EAK-TBM, 2015 WL 4623733 (M.D. Fla. July 31, 2015), the court considered this argument regarding insurers and insureds, but as applied to an insurance holding company and that holding company's subsidiary's insureds. At the summary judgment stage, as well as the motion to dismiss phase, *Hepp* concluded that determining "[w]hether or not a holding company qualifies as an 'insurer' is a

factually dependent inquiry" and therefore the claim for breach of "a fiduciary relationship is not barred as a matter of law." 2015 WL 4623733, at *12 (citing *Hogan v. Provident Life and Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1288 (M.D. Fla. 2009). Because determining as a threshold matter whether Defendants, acting to administer Plaintiffs' assignors' self-funded health benefits plan, are insurers is a fact question, this claim is not subject to dismissal at this stage. *Id.*

As to the basis for the fiduciary relationship, this can be implicitly established "upon the specific factual situation surrounding the transaction and the relationship of the parties" and when "confidence is reposed by one party and a trust accepted by the other." *Hogan*, 665 F. Supp. 2d at 1287 (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994)).

The Complaint alleges that through their contractual obligations to administer the self-funded plans, "[Defendants are] fiduciar[ies] entrusted with the obligation to pay for medically necessary services, covered services or covered benefits" and that Defendants have breach this duty by refusing "to pay for these services in bad faith and in an arbitrary and capricious manner" which is a violation of their "fiduciary duties under Florida law." [Compl. at ¶¶ 9, 67-69]. These allegations are sufficient to plead a plausible claim for breach of fiduciary duty. *See Hepp*, 2015 WL 4623733, at *12; *see also Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1238 (M.D. Fla. 2011) (finding that notwithstanding "Florida law typically recognizes no fiduciary relationship between an insurer and an insured" that plaintiffs "allegedly entrusted Haskell with the authority to act as the 'money manager' and this is sufficient to state a claim for breach of fiduciary duty.). Therefore, Defendants' Motion to dismiss Count V should be denied.

### H.   Plaintiffs Sufficiently Plead Their Promissory Estoppel Claim

Defendants' request for dismissal of Plaintiffs' promissory estoppel claim (Count VI) must fail because Plaintiffs alleged sufficient facts relating to Defendants' confirmation of

coverage for the relevant tests.  Paragraphs 16 through 18 and Exhibits A and B (which identifies the Defendants' claim identification number for each claim for which coverage was confirmed, the patient identification number identifying each patient for whom coverage was confirmed and the date of service for each claim) of the Complaint provide Defendants with all of the information needed at this early pleading stage to satisfy the *Twombly* and *Iqbal* pleading requirements. *See Tiller v. State Farm Mut. Auto. Ins. Co*, 549 F. App'x 849, 852-53 (11th Cir. 2013) (recognizing all that is required is the factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").  Defendants ask this Court to apply a heightened "who", "what", "when", "where" and "how" standard that is improper for a promissory estoppel claim. [Motion at 14].

Additionally, contrary to Defendants' assertion, Plaintiffs allege sufficient facts to show a "definite" promise for payment upon which they relied to their detriment.  [Motion at 14].  Under promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."*Peacock Med. Lab, LLC,* 2015 WL 12 2198470, at *5 (quoting *W.R. Grace & Co. v. Geodata Servs., Inc*, 547 So. 2d 919, 924 (Fla. 1989)).  The promise must be "definite,"*id.*, and the reliance upon it "reasonable." *See Romo v. Amedex Ins. Co*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006).  Here, both prongs are met.

Plaintiffs allege that (1) Defendants confirmed that the requested laboratory services were covered benefits under the relevant plans, (*see* Compl. at ¶¶ 16, 75), and that (2) Defendants promised they would pay Plaintiffs for providing these covered services.*Id.* at ¶ 76.  These allegations, along with Exhibits A and B of the Complaint, satisfy the pleading requirement

under Eleventh Circuit law and even under the stricter *Vencor Hosp. v. Blue Cross Blue Shield of Rhode Island*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000), which does not apply Eleventh Circuit law. *See Seoul Broad. Sys. Intern., Inc. v. Ladies Prof'l Golf Ass'n* No. 6:09-cv-2050-Orl-19DAB, 2010 WL 2035137, at *5 (S.D. Fla. May 21, 2010) (citing *Iqbal*, 129 S.Ct. at 1949) (at the pleading stage, Plaintiffs "need not prove the promise by clear and convincing evidence… , [r]ather, [plaintiff] must simply allege facts plausibly establishing the existence of a definite promise.").

Also, *Vencor*, a summary judgment ruling, is distinguishable because of the important difference between the terms "kinds of treatment" and "costs of treatment" and, because Vencor made an allegation regarding the "kinds of treatment" only, and not the "costs of treatment," *Vencor* concluded the promissory estoppel claim related to treatment only and was thus too indefinite. *Vencor*, 86 F. Supp. 2d at 1165.   Unlike *Vencor*, Plaintiffs specifically allege that Defendants confirmed not only that services were covered, but that Defendants would also *pay* Plaintiffs for rendering those proposed services. [Compl. at ¶ 75].   This is clearly sufficient as Vencor's complaint survived the pleading stage.   But for Defendants agreement to reimburse, Plaintiffs would not have provided the services. *Id.* at ¶ 77.   Because Defendants knew or should have known these statements would induce Plaintiffs to provide these services, they should be estopped from denying payment now.   Accordingly, Defendants' Motion to dismiss Count VI should be denied.

## CONCLUSION

For the reasons set forth above, the Court should deny the Motion in full.   Alternatively, to the extent the Court is inclined to grant any portion of the Motion, Plaintiffs respectfully request the opportunity to provide a more definite statement or re-plead their complaint to cure any such defects because dismissal with prejudice is not warranted here.

Respectfully submitted,

Date:  October 26, 2015

**AKERMAN LLP**

One Southeast Third Avenue
Suite 2500
Miami, FL  33131-1714
Telephone:  (305) 374-5600
Facsimile:  (305) 374-5095

By: */s/Darryl R. Graham*

    MICHAEL C. MARSH
    Florida Bar No. 0072796
    Primary e-mail: michael.marsh@akerman.com
    Secondary e-mail: sharon.luesang@akerman.com
    FRANCISCO A. RODRIGUEZ
    Florida Bar No. 0653446
    Primary e-mail: francisco.rodriguez@akerman.com
    Secondary e-mail: giselle.cordoves@akerman.com
    DARRYL R. GRAHAM
    Florida Bar No. 0060857
    Primary e-mail: darryl.graham@akerman.com
    Secondary e-mail: eileen.guzman@akerman.com

*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 26, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Darryl R. Graham*

Darryl R. Graham

<u>**SERVICE LIST**</u>

Christopher C. Marquardt
Brian R. Stimson
Patrick C. DiCarlo
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: 404-881-7000
Fax:    404-881-7777
chris.marquardt@alston.com
brian.stimson@alston.com
pat.dicarlo@alston.com

*Counsel for Defendants*